**Roseann UNDERWOOD Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant.**

**No. CIV.03–407–SLR.**

United States District Court, D. Delaware.

Oct. 25, 2004.

Martin D. Haverly, Esquire of Wilmington, Delaware. Counsel for plaintiff.

M. Jean Boyle, Esquire of Tybout Redfearn & Pell, Wilmington, Delaware. Counsel for defendant. Of Counsel: Sidney R. Steinberg, Esquire and Robert J. Toy, Esquire of Post & Schnell, Philadelphia, Pennsylvania.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Rosann Underwood filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 17, 2002, alleging discrimination by defendant Sears, Roebuck & Company based on gender and age discrimination. (D.I. 52 at 19) The EEOC complaint resulted in a right to sue letter. On April 21, 2003, plaintiff filed this action alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and age discrimination in violation of the ADEA. (Id.) On January 22, 2004, plaintiff filed for leave to amend her complaint, which was granted by the court. (D.I. 27) On March 9, 2004, plaintiff filed an amended complaint alleging Equal Pay Act ("EPA") violations in addition to the claims in the first complaint. (D.I. 42) Plaintiff is seeking reinstatement into her original position or one of the post-reorganization assistant manager positions, or damages in the form of front pay, loss of benefits and any incidental damages. (D.I. 52 at 7) Plaintiff also seeks liquidated, compensatory and punitive damages for the violation of her rights. (Id.)

The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Currently before the court is defendant's motion for summary judgment. (D.I 45) For the reasons discussed below, defendant's motion for summary judgment is denied in part and granted in part.

## II. BACKGROUND

Plaintiff had been employed by defendant from 1973 to 2001, serving as an assistant store manager ("ASM") since 1975. (D.I. 46 at 11) Plaintiff's first managerial position was in the cosmetics department. (D.I. 47 at A–51) A couple of years later the jewelry department was added to her responsibilities, then accessories and intimate apparel were added. (Id. at A–51 to 52) Eventually, plaintiff was the manager for the entire women's department. (Id. at A–52) She was promoted to this position by the store manager at that time, Dave Macomis. (Id. at A–52) Once the women's department became too large for one manager, it was divided. Plaintiff became the manager of women's apparel ("Ready–to–Wear") and the rest of the department was given to another manager. (Id. at A–54) In 2001, plaintiff was still the "Ready–to–Wear" ASM at defendant's Prices Corner store. (D.I. 46 at 4) At that time there were thirteen ASM positions: Ready-to-Wear, Brand Central, Home Improvement, Operations, Men's, Asset Protection, Automotive, Children's, Jewelry and Cosmetics, Intimate Apparel and Accessories, Human Resources, Hardware and Home Fashions. (D.I. 46 at 4, D.I. 51 at 3)

### A. EPA Violation

In January 1999, plaintiff was the third

highest paid manager.[1] (D.I. 49 at A–789–811) In September 2000, defendant hired Jeff Grossman ("Grossman") to serve as manager of Brand Central.[2] (D.I. at A–335) Brand Central was the highest grossing department at the Prices Corner store. (D.I. 47 at A–61) As the Brand Central manager, Grossman was responsible for sales within the store, delivery, service and installation of appliances. (D.I. 47 at A–307–308) Grossman was paid approximately $5,000 more than plaintiff upon transferring to the Price's Corner store.[3] (D.I. 49 at A–792) Grossman was transferred to another store during the reorganization. (D.I. 52 at 201) In April 2001, LaFreeda transferred to the Price's Corner store to serve as the Operations manager. (D.I. 47 at A–336, D.I. 48 at A–541) As the Operations manager, LaFreeda was responsible for shipping and receiving, asset protection, office operations, off-site storage and stockroom operations throughout the store. (D.I. 48 at A–33, 559, 562, 567, 582) His incoming salary exceeded plaintiff's by approximately $7,000. (D.I. 49 at A–796)

## B. Discriminatory Termination

Late in 2001 and early in 2002, defendant reorganized its management structure by consolidating the thirteen ASM positions into seven ASM positions,[4] two of which were non-sales management positions (i.e. In–Store Marketing and Operations). (D.I. 46 at 4, 5, D.I. 51 at 2) Plaintiff was terminated during the reorganization. (Id.) Plaintiff was 47 years old when she was terminated. (D.I. 51 at 4) Before the reorganization there were seven female managers and six male managers. (D.I. 51 at 33)

Reassignment of managers during the reorganization was partly based on which positions the managers preferred. (D.I. 52 at 387) Defendant provided the ASMs with a list of the post-reorganization positions and asked them to rank their preferences. (D.I. 48 at A–708) Plaintiff ranked Softlines as her first choice and In–Store Marketing as her second choice. (Id.) Two other managers ranked Softlines as their top pick and three ranked Marketing as either their first or second choice. (Id.)

In addition to preference, managers were promoted based on the store manager, Vince Varone's, opinion of whether they were " 'team players' and capable of adapting to new responsibilities and new ways of doing things." (D.I. 46 at 12) These qualifications were evaluated through the use of a written assessment (the "FLS Evaluation") that resulted in a final FLS score. (D.I. 52 at 387) The FLS score was calculated by adding the points from a manager's prior evaluations to the store manager's rating of additional skills.[5] (D.I. 52 at

1. Both Judy Stanton and Millie Knapp were paid more than plaintiff. (D.I. 49 A–789–811)

2. Grossman managed a small Brand Central department at a different store prior to transferring. (D.I. 47 at A–335)

3. Grossman's increase in pay was negotiated with Varone while Varone was recruiting him to transfer to the Price's Corner store. (D.I. 47 at A–336)

4. Operations, In–Store Marketing, Brand Central, Hardlines, Softlines, Automotive and Asset Protection. (D.I. 51 at 3) The final two positions were not affected by the reorganization. (D.I. 52 at 106) However, the Asset Protection ASM, Steve Edwards, was promoted to Operations manager, a new position created through the reorganization. (Id.)

5. Including the ability to "drive results and execution," be a leader during times of change, "communication," customer service and "personal strengths." This last category depended on a manager's ability to work well under pressure, manage ambiguity and attitude. (D.I. 52 at 381–86)

381) Plaintiff's overall FLS score was a 43.[6] (D.I. 52 at 381)

Plaintiff argues that her FLS evaluation is not representative of her abilities and was manipulated by Varone to result in higher scores for those managers he wanted to promote. (D.I. 51 at 5) Thirteen days before her FLS evaluation, plaintiff received her 2001 employee evaluation. (D.I. 52 at 315) In her employee evaluation, plaintiff received mostly rankings of "[c]onsistently meets expectations," but did receive some rankings of "[s]ome expectations met" and "[f]ar exceeds expectations." (D.I. 52 at 315–326) Most notably, the evaluating manager, Varone, agreed that plaintiff could "be counted on to lead change." (*Id.*) Plaintiff received a ranking of "marginal" on her FLS evaluation for her ability to lead change. (D.I. 52 at 381) Also, on her employee evaluation plaintiff received a ranking of "[c]onsistently exceeds expectations" for customer service, but only received a "good; solid" on her FLS evaluation. (D.I. 52 at 324, 381)

Four of the five ASMs promoted during the reorganization, Stanton, LaFreeda, Knapp and Myers received FLS scores higher than plaintiff's.[7] (D.I. 2 at 382–86) Varone promoted Judy Stanton,[8] originally the Men's manager, to Softlines. (D.I. 46 at 11) Jim LaFreeda, originally the Operations manager,[9] was promoted to In–Store Marketing. (*Id.*) Millie Knapp,[10] the pre-reorganization Home Fashions Manager, was promoted to Brand Central. (D.I. 46 at 5) Dave Myers,[11] the Home Improvement/Lawn & Garden Manager before the reorganization, was promoted to Hardlines manager.[12] (D.I. 48 at A–472) Plaintiff alleges that Varone's decisions were based on age and gender.[13]

After informing the terminated managers that they were not included in the reorganization, Varone asked Edwards to read the Operations manager job description. (D.I. 52 at 156) Two weeks later, Varone offered the position to Edwards[14] and he was promoted to Operations man-

---

6. Plaintiff received rankings of "[g]ood; solid" for all but her ability to lead change and her personal strengths. For each of these categories, plaintiff received rankings of "[m]arginal." (D.I. 46 at 381)

7. The fifth ASM was Edwards who did not receive an FLS evaluation because his original position, Asset Protection ASM, was not affected by the reorganization.

8. Judy Stanton was 53 years old and had worked for defendant, in a managerial capacity, for 32 years. (D.I. 46 at 5)

9. Jim LaFreeda was 31 years old when he was promoted and had worked for defendant for 12 years. (D.I. 46 at 8, D.I. 48 at A–536) As Operations Manager, LaFreeda was responsible for the store's sales. (D.I. 48 at A–543–544)

10. Millie Knapp was 55 years old and had worked for defendant for 37 years. (D.I. 46 at 5)

11. Dave Myers was 47 years old and had worked for defendant for 30 years at the time of the reorganization. (D.I. 46 at 5)

12. Myers was responsible for the same departments before and after the reorganization; only his job title changed. (D.I. 48 at A–472)

13. Plaintiff cites the fact that five of the seven promoted managers were men. (D.I. 51 at 6) Plaintiff alleges that the two women were kept in stereotypically female departments and that they were the most subservient and docile of the female managers. *Id.*

14. Stephen Edwards was 23 years old at the time of the reorganization, had worked for defendant for four years and had been a manager for one year. (D.I. 46 at 7, D.I. 52 at 149)

ager,[15] a position in which plaintiff had expressed interest. (D.I. 46 at 11) When the reorganization was complete, there were five male managers and two female managers.

## III. STANDARD OF REVIEW

■ A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment;

there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.*, 814 F.Supp. 1209, 1215 (D.Del. 1993) (*quoting Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

## IV. DISCUSSION

### A. Age Discrimination

■ The Age Discrimination Act ("ADEA") prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Because plaintiff has not provided evidence of direct age discrimination, this court analyzes her claim under the familiar burden shifting approach. *See Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir.2002). The burden shifting analysis under the ADEA requires that plaintiff first establish a prima facie case of age discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct.

---

**15.** Stephen Edwards was the Asset Protection ASM before the reorganization. This position was not affected by the reorganization, but Edwards was still promoted to a new position as a result of the reorganization. (D.I 46 at 12)

2742, 125 L.Ed.2d 407 (1993). A plaintiff can establish a prima facie case by showing that: (1) she is at least 40 years of age and thus a member of the protected class; (2) she was qualified for the position from which she was discharged; (3) she was dismissed despite being qualified; and (4) her " 'employer retained someone similarly situated to [her] who was sufficiently younger.' " *Monaco v. American General Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004); *see also Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 (3d Cir.1990). Once plaintiff has established a prima facie case, the burden shifts to a defendant to produce evidence of a legitimate nondiscriminatory reason for the adverse decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable fact finder to conclude that the reasons are fabricated. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

Plaintiff alleges that she was discriminated against based on her age because defendant promoted two younger men with less experience, LaFreeda and Edwards,[16] to managerial positions for which she was qualified. Defendant argues that LaFreeda's and Edward's post-reorganization positions dealt with operations, whereas plaintiff was a sales manager, and that Varone felt plaintiff was unable to adapt to changing situations, including the reorganization.

### 1. Plaintiff's Prima Facie Case

■ Plaintiff has carried her burden of establishing a prima facie case with respect to the In–Store Marketing and Operations manager positions. Plaintiff is older than 40 years old. LaFreeda and Edwards, who received the positions at issue, were 31 and 23 respectively;[17] therefore, LaFreeda and Edwards are young enough to warrant an inference of age discrimination.

Sarah Davis, the former Human Resources Manager, stated that plaintiff was qualified for the Operations manager position, more so than Edwards. (D.I. 52 at 430) Dee Patton, a former sales manager who worked for defendant for 24 years, stated that plaintiff was qualified for the In–Store Marketing position. Patton further stated that marketing was a regular part of all department manager positions; therefore, as a department manager, plaintiff had past experience in the area of marketing. (*Id.* at 434–35) It is undisputed that plaintiff was terminated during the reorganization and that LaFreeda and Edwards were promoted during the reorganization.

### 2. Defendant's Legitimate Nondiscriminatory Reasons

■ Defendant claims the plaintiff was not promoted because, in Varone's opinion, she would not "be able to adapt to the enormous changes that were going to take

---

16. Plaintiff also challenged the transfer of Grossman to another store as discriminatory. (D.I. 51 at 38) However, plaintiff indicated her unwillingness to transfer stores (D.I. 52 at 331); therefore, Grossman's post reorganization position was not one that plaintiff would be considered qualified for. With respect to Grossman, plaintiff did not carry her burden of establishing a prima facie case.

17. Although defendant promoted individuals who were older than plaintiff, there is still the issue of whether plaintiff was not promoted to the positions that LaFreeda and Edwards received because of her age.

place in the Prices Corner store." (D.I. 46 at 22) It is undisputed that Varone was in the best position to judge candidates and their performances. (D.I. 47 at A–97)

Defendant also argues that plaintiff was not as qualified as either LaFreeda or Edwards. Defendant claims that Edwards was the pre-reorganization Asset Protection Manager and had experience in shipping, receiving, center aisle cash-wraps, the store office, stockrooms, merchandise staging, off-site storage, store maintenance and safety. Plaintiff had limited experience in these areas. (D.I. 47 at A–112) Defendant claims that, as the pre-reorganization Operations Manager, LaFreeda had storewide experience in product placement and internal signage, which made him more qualified to be In-store Marketing ASM.

### 3. Plaintiff's Evidence of Pretext

■ Plaintiff's 2001 employee evaluation includes higher scores than she received on her FLS evaluation. On plaintiff's employee evaluation, Varone agreed that she could be counted on to lead change, but indicated her inability to handle change as a reason she was not promoted. (D.I. 52 at 316) In light of her employee evaluation, a finder of fact could conclude that Varone based his determination on who to promote subjectively on age rather than nondiscriminatory reasons.

Plaintiff argues that she had more managerial experience than Edwards because she had more experience managing employees and had worked for defendant longer.[18] Edwards had been an Asset Protection manager for less than two years and had worked at the Prices Corner store for three months. (D.I. 52 at 149) Patton's affidavit also stated that the Ready–to–Wear position entailed more responsibility

than the Asset Protection Manager role. (*Id.* at 435–36) Plaintiff had some experience with asset protection because she checked reports regarding associate discounts, took part in the apprehension of shoplifters and unloading trucks on the dock. (D.I. 47 at 112–113) A reasonable fact-finder could conclude that plaintiff had experience relevant to the operations position, plus additional managerial experience that Edwards did not have.

The record further indicates that plaintiff had experience with in-store marketing. The job description for sales managers indicated that they were responsible for "[a]ggressively merchandis[ing] [the] sales floor to drive revenues," implementing "aisle merchandise plans to create item and issue dominance," "[e]nsure[ ] that all advertising merchandise is presented and signed properly." (D.I. 52 at 400) All of these could be considered in-store marketing. In addition, Patton stated that in-store marketing was the responsibility of the sales managers, including Ready–to–Wear, prior to the reorganization. (*Id.* at 435) With respect to the In-store Marketing and Operations positions, plaintiff has carried her burden of establishing a material issue of fact with respect to whether LaFreeda and Edwards were more qualified for the position than she was.

### B. Gender Discrimination

■ Claims brought pursuant to Title VII are analyzed under a burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of gender discrimination. In order to state a case based on discrimination, plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circum-

---

**18.** Edwards managed 5 to 7 employees. (D.I. 51 at 435) Plaintiff managed up to 70 people while she was the manager of the Women's Department. (D.I. 47 at 104)

stances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. *See Boykins v. Lucent Techs., Inc.,* 78 F.Supp.2d 402, 409 (E.D.Pa.2000) (citing *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir.1999)). The Third Circuit recognizes, however, that the elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.,* 191 F.3d 344, 352 (3d Cir.1999).

If plaintiff makes a prima facie showing of discrimination, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *See Sheridan,* 100 F.3d at 1072.

### 1. Plaintiff's Prima Facie Case

■ Plaintiff is a member of a protected class because she is female. It is undisputed that plaintiff suffered an adverse employment action because she was terminated during the reorganization. At issue is whether there are circumstances that give rise to an inference of gender discrimination. Before the reorganization there were seven female managers and six male managers; after the reorganization there were five male managers and two female managers. No male manager was terminated during the reorganization.[19] Plaintiff has demonstrated that there was a subjective element built into the FLS evaluations because Varone's evaluations did not match recent employee evaluations. In light of plaintiff's 2001 evaluation, it is arguable that the FLS evaluations were used by Varone to discriminate against plaintiff by hand selecting male managers. Based on this evidence, a fact finder could conclude that Varone's decisions were based on gender.

### 2. Defendant's Legitimate Nondiscriminatory Reasons

■ Similar to its ADEA defense, defendant claims plaintiff was not as qualified for the positions to which Myers, LaFreeda and Edwards were promoted. Defendant argues that Varone, the manager in a position to evaluate all of the ASMs, thought plaintiff would be unable to acclimate to the changes that would result from the reorganization. In addition, two women were promoted to ASM positions during the reorganization.

### 3. Plaintiff's Evidence of Pretext

■ Plaintiff had experience with in-store marketing, had worked for defendant longer than Edwards and may have had more managerial experience. See Part IV. A.3. Varone's impressions of her inability to handle the reorganization changes is contradicted by plaintiff's employee evaluation.[20] A jury could conclude, based on

---

19. Grossman, the male manager who was not promoted at the Prices Corner store, was transferred as a result of the reorganization. (D.I. 52 at 201)

20. Other than the fact that plaintiff was a sales manager and Myers has a post-reorganization sales position, plaintiff did not argue that she was as, or more qualified than, Myers. To carry her burden, however, plaintiff does not have to discredit defendant's evidence with respect to Myers, LaFreeda and Edwards individually. Instead, plaintiff has to "impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." *Fuentes v. Perskie,* 32 F.3d 759, 764 fn. 7 (3d Cir.1994).

plaintiff's evidence, that defendant's promotion choices were based on gender and not on qualifications. Plaintiff has shown that defendant's justifications for promoting LaFreeda and Edwards may be pretextual.

### C. EPA Violation

The Equal Pay Act ("EPA") prohibits employers from discriminating

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires **equal skill, effort, and responsibility,** and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex [.]

29 U.S.C. § 206(d)(1) (emphasis added). The Third Circuit has articulated that the controlling consideration in EPA cases is whether or not the jobs being compared have a "common core" of tasks that make the jobs equal. *See Brobst v. Columbus Serv. Int'l,* 761 F.2d 148, 156 (3d Cir.1985). Inconsequential differences in job requirements cannot be used to justify paying a lower wage to an employee of one gender. *Brobst,* 761 F.2d at 155–56 (*citing Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 152 (3d Cir.1976)). Therefore, the jobs being compared must be substantially similar, but carry different wages, to violate the EPA. *See Angelo,* 555 F.2d at 1173. Once a plaintiff has established that jobs are equivalent, but yield different wages, a defendant can defend the pay

differential by arguing it falls under one of the four exceptions listed in § 206(d)(1).

Plaintiff alleges that Grossman and LaFreeda were paid more than her for substantially similar work. Defendant argues that Grossman, LaFreeda and plaintiff's jobs were not comparable; therefore, paying Grossman and LaFreeda higher salaries did not violate the EPA.

Plaintiff's sales manager position and LaFreeda's operations position are not comparable for EPA purposes because they did not have the same level of responsibility. *See generally* 29 C.F.R. § 1620.17(a) (2004) ("[r]esponsibility is concerned with the degree of accountability required in the performance of the job"). LaFreeda was essentially a store manager with responsibilities for the entire store. Plaintiff was a department manager with responsibilities for a single department. The fact that plaintiff had some experience in the areas for which LaFreeda was responsible (e.g., payroll budgeting, unloading at the docks, profit and losses) does not equate their positions. Plaintiff was responsible for these things within her department; LaFreeda was accountable for them store wide.

Plaintiff and Grossman's positions may be comparable for EPA purposes. Both were sales managers operating under the same job description. (D.I. 52 at 399) Plaintiff provided evidence that many of defendant's employees regarded all sales positions as equivalent. (D.I. 52 at 228, 251, 273, 296) Each sales manager was responsible for a store department. Although Grossman had responsibilities in addition to in-store sales, it is not clear that these increased his responsibilities and effort requirements so much so as to render the positions not equivalent.

Grossman's inflated salary, however, was based on something other than gen-

der. According to defendant, it needed a "topnotch" Brand Central manager for its highest grossing department and recruited Grossman from another store. (D.I. 47 at A–336–37) Grossman negotiated his pay increase with defendant, requiring a raise because the Brand Central department at Prices Corner was larger than the one at his previous store, and the transfer would significantly add to his commute. (D.I. 48 at A–746–49) Plaintiff did not provide any evidence that shed doubt on defendant's justification. Therefore, summary judgment is granted in favor of defendant.

### D. Liquidated Damages

■ Under 29 U.S.C. § 626(b) a "willful" violation of the ADEA can give rise to liquidated damages. "Willful" violations are those where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [ADEA]." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). A defendant that knows the ADEA is "in the picture" does not necessarily willfully violate § 626(b). *Id.* at 614, 113 S.Ct. 1701 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

■ Defendant argues that liquidated damages are not appropriate because there is no evidence that it wilfully discriminated against plaintiff. Plaintiff contends that Varone "was aware of the anti-discrimination laws and even taught employees about them . . . yet he engaged in intentional discrimination . . . ." (D.I. 51 at 39) Plaintiff has not shown that defendant knew its conduct violated the ADEA, disregarded this and continued to discriminate against plaintiff. All plaintiff has shown is that defendant knew about the ADEA. This is tantamount to knowing that the ADEA is "in the picture," not a "wil-ful" violation. Defendant's motion for summary judgment on the issue of liquidated damages is granted.

### E. Punitive Damages

■ Punitive damages in Title VII cases are limited "to cases in which the employer has engaged in intentional discrimination and has done so with 'malice or with reckless indifference to the federally protected rights of an aggrieved individual.' " *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 529–30, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (quoting 42 U.S.C. § 1981a(b)) (emphasis added). In the context of punitive damages and vicarious liability, an employer cannot be liable for the discriminatory actions of it employees, even managers, "where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.' " *Id.* at 545, 119 S.Ct. 2118.

■ Defendant argues that punitive damages are not appropriate because there is no evidence that it maliciously or recklessly was indifferent to plaintiff's federal rights. Plaintiff contends that Varone was aware that he was discriminating against her, and knew that in doing so he was violating the law. Plaintiff has not shown that defendant's alleged discrimination was malicious or amounted to reckless indifference. By her own admission, defendant provided information to employees regarding gender discrimination and had an ethics hotline that employees could contact regarding discrimination. (D.I. 47 at A–62–69) Plaintiff never called the hotline to report discrimination. There is no evidence that defendant knew about Varone's alleged actions of discrimination before this lawsuit. Therefore, defendant's motion for summary judgment with respect to punitive damages is granted.

## V. CONCLUSION

Defendant's motion for summary judgment is denied in part and granted in part. Defendant's motion is denied with respect to plaintiff's ADEA claim and Title VII gender discrimination claim. Defendant's motion for summary judgment is granted with respect to plaintiff's EPA claim and claim for liquidated and punitive damages. An order consistent with this memorandum opinion shall issue.