**Alero A. KIDD, Plaintiff,**

v.

**MBNA AMERICA BANK, N.A., Defendant.**

**No. CIV.A.01–205–SLR.**

United States District Court, D. Delaware.

Sept. 30, 2002.

---

Darryl K. Fountain, Wilmington, DE, for Plaintiff.

Laurence V. Cronin, Smith, Katzenstein, & Furlow, Wilmington, DE, for Defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Alero A. Kidd filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 28, 1998, alleging employment discrimination by defendant MBNA America Bank, N.A. based on retaliation, national origin, sex and age. (D.I. 56 at A1–4) Plaintiff received a Right to Sue letter from the EEOC dated January 4, 2001. (D.I.1) On April 2, 2001, plaintiff filed this action alleging employment discrimination based on age, gender, and race, violation of the Equal Pay Act, and hostile work environment. Plaintiff is seeking reinstatement to a position of equal duties and responsibilities, preliminary and permanent orders restraining defendant from engaging in alleged conduct, back pay including prejudgment interest and employment benefits, compensatory and punitive damages, attorney's fees and costs, and any other relief deemed just and appropriate. (*Id.*) The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Currently before the court is defendant's motion for summary judgment. (D.I.54) For the reasons discussed below, the court shall grant defendant's motion for summary judgment.

## II. BACKGROUND

Plaintiff was employed by defendant beginning September 25, 1995 in the Telemarketing Department. (D.I. 1 at ¶ 6) At issue are defendant's denials of promotions sought by plaintiff during the period of March 31, 1997 through December 1997. These applications for promotion and defendant's reasons for denying the promotions are detailed below.

### A. Floor Coach and Summer Associate Floor Coach

On March 31, 1997, plaintiff posted for the position of Floor Coach in defendant's Newark facility. (D.I. 56 at A10, ¶ 13) Personnel informed plaintiff that she was ineligible for posting as she was currently on corrective action,[1] which would not end until May 6, 1997. (*Id.* at ¶ 14) Plaintiff also inquired about a Summer Associate Floor Coach position, but was told that she could not apply for that position either until the end of the corrective action period. (*Id.* at A11, ¶ 16) On May 7, 1997, plaintiff reapplied for the Summer Associate Floor Coach position, but other applicants were already well into the interview process and no open positions were available for plaintiff. (*Id.* at A10, ¶ 15)

In July 1997, plaintiff found that defendant had placed a young, white male (John Doe[2]) in a Summer Associate Floor Coach position. (*Id.* at A1) John Doe was also on corrective action at the time he applied for the position. (*Id.*) Plaintiff complained to defendant's Equal Employment Opportunity ("EEO") Officer about the unequal treatment. (*Id.*) Defendant investigated plaintiff's complaint, and told plaintiff that John Doe should not have been offered the position. (*Id.* at A5–6) Defendant acknowledged that a mistake had been made. (*Id.*) Defendant noted that the Summer Associate Floor Coach positions were filled informally, and the manager who recommended John Doe was not aware that he was on corrective action. (*Id.* at A11) Because of the informal nature of the process, personnel records were not always checked to ensure eligibility of the person posting for a position. (*Id.*)

### B. Fraud Control Analyst

Plaintiff applied for the position of Fraud Control Analyst, a second level position in the Fraud Department, on May 7, 1997. (*Id.*) Plaintiff was not offered the position. Three other applicants, all of whom were already working in the Fraud Department, were made Fraud Control Analysts. (*Id.*) Plaintiff alleges that her previous legal training and work experience made her equally qualified for the position. (*Id.* at A29–30)

### C. Compliance Analyst/Law Department Paralegal

Plaintiff applied for a paralegal position on July 7, 1997. (*Id.* at A12) Plaintiff was not offered the position. Another applicant with an Associate Degree in Paralegal Studies and seven years experience as a paralegal instead was given the position. (*Id.*) Plaintiff alleges she was more qualified than this applicant because she has a law degree. (*Id.* at A31–32) Plaintiff alleges that she saw no blacks in the legal department when she was there, which is offered as evidence of defendant's discrimination against persons of color. (*Id.* at A32)

---

1. Corrective action is defendant's term for a disciplinary action taken against an employee who violates company policy. Defendant's policy is that anyone who is on corrective action may not post for another position during that six-month period. (D.I. 56 at A9, ¶ 7)

2. A pseudonym is used to protect the privacy of this person who is not a party to this lawsuit.

### D. Compliance Coordinator

Plaintiff applied for the position of Compliance Coordinator in August 1997, but was not offered this position. (*Id.* at A12) Defendant states that other applicants had more experience than plaintiff and that no one was hired to fill this position. (*Id.*) Plaintiff disputes this fact, but has provided no evidence comparing her experience with that of the other applicants or evidence that someone else was in fact given the position in August 1997. (*Id.* at A34)

### E. Retaliation and Hostile Work Environment Claims

Plaintiff alleges that in response to her complaint to defendant's EEO officer about the Summer Associate Floor Coach position, John Doe began to harass her. (*Id.* at A23.1) Specifically, plaintiff alleges that John Doe made disparaging comments about her national origin and made comments about her initials, A.K., indicating that his weapon of choice would therefore be an AK47. (D.I. 1 at ¶ 15) John Doe also pointed his finger at plaintiff as if it were a gun and made fun of plaintiff's accent. (*Id.*) In November 1997, John Doe made a comment to plaintiff that "oh, they take foreigners in Credit." (D.I. 56 at A12, ¶ 26) This comment was overheard by one of defendant's supervisors who counseled John Doe that such comments were never appropriate and that he was not to speak to plaintiff. (*Id.*) Plaintiff complained to this supervisor about the comment, but acknowledged making disparaging comments about Americans to John Doe. (*Id.* at A12–13) Plaintiff also made a complaint regarding John Doe's comments about an AK47. (*Id.*) Two weeks later, John Doe chose to resign from his position in lieu of termination in light of his comments and prior disciplinary record. (*Id.* at A13, ¶ 29)

### III. STANDARD OF REVIEW

A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no material issue of fact is in dispute. *See Matsushita Elec. Indus.Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assur. Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999). With respect to summary judgment in dis-

crimination cases, the court's role is " 'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.' " *Revis v. Slocomb Indus.*, 814 F.Supp. 1209, 1215 (D.Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

## IV. DISCUSSION

### A. Discrimination Claim

█ Plaintiff alleges that she was subject to discrimination based on sex and national origin when defendant failed to promote her in violation of Title VII of the Civil Rights Act of 1964.[3] Claims brought pursuant to Title VII are analyzed under a burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of race or gender discrimination under Title VII. In order to state a case based on discrimination, plaintiff must prove that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. *See Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 409 (E.D.Pa.2000) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999)). The Third Circuit recognizes, however, that the elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir.1999).

If plaintiff makes a prima facie showing of discrimination or retaliation, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

Although plaintiff is an African–American female over age forty, and has demonstrated an "adverse employment action" in the denials of promotion, in only one instance—the Summer Associate Floor Coach position—did plaintiff demonstrate that a similarly situated person who was not a member of a protected class was treated differently. In that one instance, defendant has admitted that a mistake was made in even considering the other person who was also on corrective action at the time. For this one instance, the court finds plaintiff has met the burden of making a prima facie case. However, the court also finds that defendant's admission that a mistake was made meets defendant's burden for showing a legitimate,

---

**3.** The anti-discrimination provision of Title VII provides:

It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

nondiscriminatory reason for the action. Thus, the burden shifts back to plaintiff to show that the reason articulated was not the actual reason, but rather a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The court finds that plaintiff has failed to meet this burden. Plaintiff has provided no evidence that would allow a factfinder to reasonably either disbelieve defendant's articulated legitimate reason, or believe that an invidious discriminatory reason was more likely than not a motivating cause of defendant's action. *See Simpson v. Kay Jewelers,* 142 F.3d 639, 644 (3rd Cir.1998).

Plaintiff is not able to make the prima facie case for any of the other instances of denial of promotions. She has failed to show that similarly situated persons not in a protected class were treated more favorably. Plaintiff has not provided any evidence regarding qualifications of persons actually offered the positions relative to her qualifications or, in the case of positions not filled, that defendant continued to seek to fill the position.

## B. Retaliation Claim

■ As with a discrimination claim, a plaintiff claiming retaliation must first establish a prima facie case for retaliation under Title VII.[4] In order to do so, a plaintiff must demonstrate by a preponderance of the evidence that: (1) she engaged in protected activity;[5] (2) the defen-

dant took adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse action. *See Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to clearly set forth, through the introduction of admissible evidence, reasons for its actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the motivating force behind the adverse employment action. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. If the defendant successfully rebuts the plaintiff's prima facie showing, the presumption of discrimination drops from the case, and plaintiff must present sufficient evidence for a reasonable factfinder to conclude "that the proffered reason was not the true reason for the employment decision." *Id.* at 256, 101 S.Ct. 1089; *see also Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir.1997) ("The plaintiff must produce evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination.").

In the case at bar, the court need not engage in an extensive burden shifting analysis because plaintiff has not presented facts sufficient to state a prima facie case on her retaliation claim. Plaintiff has failed to provide any evidence that defen-

---

**4.** The anti-retaliation section of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice ˙made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

**5.** Title VII defines a "protected activity" as an instance when an employee has

> opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

dant's denials of promotion were in any way linked to her complaint to the defendant's EEO Officer regarding the Summer Associate Floor Coach position. Since no causal link has been presented, plaintiff has failed to state a prima facie case for her retaliation claim.

### C. Age Discrimination Claim

■ The Age Discrimination Act ("ADEA") prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). As with other employment discrimination claims, in making a claim under the ADEA, plaintiff must first establish a prima facie case of discrimination. *See Hicks*, 509 U.S. at 506, 113 S.Ct. 2742. Plaintiff can establish a prima facie case by showing that: (1) she is at least 40 years of age and thus a member of the protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a sufficiently younger person to create an inference of age discrimination. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3rd Cir.1987). Once plaintiff has established a prima facie case, the burden shifts to defendant to produce evidence of a legitimate nondiscriminatory reason for the adverse decision. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *See Sheridan*, 100 F.3d at 1072.

As with the discrimination claim discussed above, the only instance in which plaintiff is able to establish a prima facie case is for the Summer Associate Floor Coach position. In that instance, defen-

dant placed a younger person in the position who was similarly situated to plaintiff. (D.I. 56 at A1) However, the court finds that defendant's explanation of a mistake meets the burden of establishing a legitimate, nondiscriminatory explanation to counter plaintiff's ADEA claim. As with the discrimination claim above, plaintiff has provided no evidence that would allow a factfinder to reasonably either disbelieve defendant's articulated legitimate reason, or believe that an invidious discriminatory reason was more likely than not a motivating cause of defendant's action. *Simpson*, 142 F.3d at 644.

Plaintiff is not able to make the prima facie case for age discrimination in any of the other instances of denial of promotions. She has failed to show that persons substantially younger than she were offered the positions.

### D. Hostile Work Environment Claim

■ To state a Title VII claim premised on a hostile work environment, plaintiff must show that: (1) she suffered intentional discrimination because of race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the defendant is liable under a theory of respondeat superior liability. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996).

Plaintiff alleges that on two occasions, John Doe made comments she felt were disparaging to her national origin. (D.I. 56 at A37) Another reference to a gun with respect to her initials was also made by John Doe. (*Id.* at A12–13) A single reference to her foreign origin was made shortly before John Doe resigned from his position. (Id. at A12, ¶ 26) The court finds that these incidents fail to establish perva-

sive and regular discrimination against plaintiff. More than a few isolated verbal incidents are necessary to establish that defendant is engaging in regular, pervasive discrimination that would detrimentally affect a reasonable person of the same race or sex in that position. *See, e.g., Aman,* 85 F.3d at 1081 ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at . . . the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (internal citation omitted). Thus, plaintiff has failed to establish a hostile work environment claim.

### E. Equal Pay Act Claim

The Equal Pay Act ("EPA") prohibits employers from discriminating

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions [.]

29 U.S.C. § 206(d)(1).

Plaintiff has provided no evidence identifying a single male employee of defendant who was paid more than she was for performance of equal work. (D.I. 56 at A37) Therefore, the court finds that plaintiff has not stated a claim under the EPA. Defendant's argument that plaintiff's claim under the EPA is barred by the statute of limitations, therefore is moot.

### V. CONCLUSION

For the reasons stated, the court shall grant defendant's motion for summary judgment. An appropriate order shall issue.

### ORDER

At Wilmington this 30th day of September, 2002, consistent with the memorandum opinion issued this date;

IT IS ORDERED that:

1. Defendant's motion for summary judgment (D.I.54) is granted.

2. The Clerk is directed to enter judgment in favor of defendant MBNA America Bank, N.A. and against plaintiff Alero A. Kidd.