Kathy V. **WILLIAMS**, Plaintiff,

v.

John E. **POTTER**, Postmaster General, United States Postal Service, Defendant.

No. CIV.A. 02–2568–KHV.

United States District Court, D. Kansas.

Aug. 19, 2004.

---

Kathy V. Williams, Kansas City, KS, David R. Hills, Lenexa, KS, for Plaintiff.

David D Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

Kathy Williams brings suit against defendant John E. Potter, Postmaster General of the United States Postal Service ("USPS"), alleging that the USPS discriminated against her on the bases of race, sex, religion and disability, and retaliated against her for protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* as amended, and the Vocational Reha-

bilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791, 794. On May 5, 2004, the Court granted defendant's summary judgment motion as to plaintiff's claims of discrimination based on religion and disability and retaliation for protected activity. *See Memorandum And Order* (Doc. # 70) filed May 5, 2004. At a status conference on May 5, 2004, the Court granted defendant leave to file a motion for summary judgment as to plaintiff's remaining claims for discrimination on the basis of race and sex. This matter comes before the Court on *Defendant's Motion For Summary Judgment On Plaintiff's Race And Gender Discrimination Claims* (Doc. # 74) filed May 25, 2004, *Defendant's Motion In Limine* (Doc. # 64) filed April 28, 2004, plaintiff's *Motion To Compel Mail Delivery* (Doc. # 77) filed June 10, 2004, and *Defendant's Motion To Continue Trial* (Doc. # 84) filed August 18, 2004. For reasons set forth below, the Court finds that defendant's motion for summary judgment should be sustained, and that defendant's motion in limine and motion to continue trial and plaintiff's motion to compel should be overruled.

### *Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

The Court affords a pro se plaintiff some leniency and must liberally con-

strue the complaint. *See Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F.Supp. 1331, 1333 (D.Kan.1994). While pro se complaints are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as other litigants. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992). The Court may not assume the role of advocate for a pro se litigant. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### *Facts*

At a status conference on May 5, 2004, the Court advised plaintiff to consult the pretrial order and local rules before she responded to defendant's motion for summary judgment. The Court specifically advised plaintiff that to controvert factual statements in defendant's motion for summary judgment, she must provide citations to the record, and that any evidence which she used to counter defendant's factual assertions would need to be authenticated. On June 10, 2004, plaintiff filed an opposition brief. *See Response To Defendant's Second Motion For Summary Judgment* (Doc. # 79).[1] Plaintiff's opposition brief does not set forth the specific paragraphs in defendant's memorandum that she dis-

putes, does not specifically contradict defendant's factual assertions with reference to those portions of the record upon which she relies, does not set forth additional facts in separately numbered paragraphs and does not include any affidavits, declarations or other materials in compliance with Rule 56(e), Fed.R.Civ.P. Accordingly, under D. Kan. Rule 56.1(b), the Court accepts defendant's factual statements, which are adequately supported by record evidence, as true.

For summary judgment purposes, the following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

The USPS hired plaintiff in 1987, and she continues to work for the USPS. On May 22, 1994, plaintiff filed an Equal Employment Opportunity complaint ("EEO complaint") with the USPS ("Complaint No. 1085–94") alleging discrimination on account of race (black), color (brown), national origin (African–American) and sex (female). Williams Dep. 113–14; Williams Dep. Ex. 4. On March 13, 1996, plaintiff signed an EEO Settlement Agreement which resolved Complaint No. 1085–94 in exchange for a payment of money. The Settlement Agreement stated in part as follows:

---

1. D. Kan. Rule 56.1 provides as follows:

 (b) *Opposing Memorandum.*

 (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

 (2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth

each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

D. Kan. Rule 56.1.

Plaintiff purports to dispute many of defendant's factual statements, but she does not refer to portions of the record on which she relies. Accordingly, the Court deems such facts admitted.

I fully understand that by agreeing to this settlement, I waive my rights to any further appeal of my allegation(s) through the EEO process. I further state that this agreement did not result from harassment, threats, coercion or intimidation.

I am fully aware that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process is binding on both parties.

Should I believe the Postal Service has failed to adhere to the stipulations contained in this agreement for any reason not attributable to my acts or conduct, I must notify the EEO Compliance and Appeals Coordinator located in my area, in writing, of the alleged noncompliance within 30 calendar days of the alleged noncompliance ...

Management agrees to the aforementioned stipulation solely in an effort to resolve the complainant's allegation(s), and this agreement should not be construed as an admission of discrimination or wrongdoing on the part of any official of the U.S. Postal Service.

Whitworth Decl. Attachment 1. After 1994, plaintiff lodged seven additional EEO complaints on four dates: No. 4–I–640–0092–97 on April 16, 1997; Nos. 4–I–640–0014–98, 1–I–641–0059–97, 4–I–640–0013–98 and 4–I–640–0015–98 on November 3, 1997; No. 1–I–643–0016–98 on December 3, 1998; and No. 1–I–643–0006–99 on April 19, 1999. *See Complaint* Ex. A.

*Non–Placement In The ASP Program*

In early 1997, the USPS implemented the Associate Supervisor Program ("ASP") to identify strong supervisor candidates in the greater Kansas City area and train them to become associate supervisors. In late 1997, the USPS had 26 vacancies for the ASP program. To apply for the ASP program, an employee had to submit a Form 991 application, take a written exam-ination, submit a writing sample and interview with the review board. The interview consisted of nine prepared questions which were designed to solicit information to rate the candidate in seven areas: leadership, decision making, human relations, verbal communications, safety, labor relations and reasoning. In approximately October of 1996, plaintiff applied for the ASP program. In early to mid-October, R. Dean Alberti, who was not plaintiff's current immediate supervisor, volunteered to prepare an initial supervisor evaluation for plaintiff's ASP application.

The ASP review board comprised Bruce Sanders (Manager Distribution Operations, Kansas City, Missouri), Pat Barba (Manager, Customer Service Operations, Kansas City, Missouri), Rosemary Goldblatt (Human Resources Specialist, Kansas City, Missouri) and John Coolidge (Postmaster, Kansas City). On March 13, 1996, Sanders had signed the Settlement Agreement regarding EEO Complaint No. 1–I–641–1085–94. None of the other ASP review board members knew of plaintiff's EEO activity.

The ASP review board initially reviewed the applications and selected 17 candidates, including plaintiff, for interviews. Eligibility for an interview did not mean that the candidate was guaranteed to be selected for the ASP program. After consulting with the ASP Coordinator, the review board reviewed the applications a second time, to expand the applicant pool to a number large enough to fill 26 ASP vacancies. Plaintiff remained eligible for an interview, but that did not mean that she had been selected for the ASP program.

Plaintiff performed poorly at her ASP interview. The review board rated her performance as "minimal" in six of the seven interview criteria, and plaintiff had one of the lowest interview scores. Plaintiff testified that her performance during

the interview was "passing" and "acceptable." She also stated that "I don't believe my best was required." Plaintiff also admitted, however, that she had no basis on which to compare her interview performance and that of other applicants. Williams Dep. 241–42. Further, on February 17, 1997, plaintiff stated in a letter to USPS Regional Director William Brown that "I had explained to the interviewers at the time of the interview that I was not at my best due to personal reasons without expounding (i.e. a death the day before, two additional burdens and one of the first questions asked during the interview process)." Williams Dep. Ex. 10 at 043.

The review board compiled each candidate's scores from the written examinations, written applications, supervisor evaluations and interviews. The board then selected for the ASP program the 26 candidates with the highest composite scores. The board selected ten women, including three African–American women, and seven African–American men. The board did not select plaintiff.

*Supervisor, Customer Services, Olathe, Kansas*

On April 8, 1997, the USPS issued a vacancy announcement for the position of Supervisor, Customer Services, at the Olathe Post Office in Olathe, Kansas. The announcement stated: "HOW TO APPLY (Individual Announcement Procedures): Complete Form 991 and return DIRECTLY to your immediate supervisor before the closing date shown above."[2] Williams Dep. Ex. 21; Williams Dep. 336–37. The Form 991 stated: "If you are applying for a specific position, complete pages 1–4 of

this form and submit the completed form to your supervisor, who will complete the evaluation for each requirement. If you want a copy of the evaluation, check the box at left." Plaintiff checked the box with a handwritten "x." Williams Dep. Ex. 22 at 066.

Plaintiff did not submit the completed Form 991 to her immediate supervisor, and she did not ask her then-current immediate supervisor to prepare a supervisor's evaluation for her application for the Olathe position. Instead, she attached to her application materials an evaluation which her former supervisor, Bruce Sanders, had written for a prior job application (no. 96–55). Sanders had completed that evaluation on August 20, 1996—about eight months before plaintiff submitted her application on April 22, 1997.

The review board for the Olathe position comprised chairperson Sara Wilson (Postmaster, Baldwin City, Kansas), Edward Keith Coleman (Operations Support Specialist) and Jean Moore (Supervisor, Customer Service Operations, Shawnee Mission, Kansas). Wilson and Moore are females, and Coleman is African–American. The review board members did not recommend plaintiff for the Olathe position because her supervisor evaluation was not current and plaintiff had not received a consolidated rating as one of the most qualified candidates.[3]

*Customer Services Supervisor, Shawnee Mission, Kansas*

On April 8, 1997, the USPS issued a vacancy announcement for the position of Customer Services Supervisor, at the

---

**2.** The USPS Handbook section which governs individual announcement application procedures requires employees applying for an initial level supervisor position to submit Form 991 (job application) "to their immediate supervisor for evaluation." EEO Case No. 4–I-

640–0013–98 Ex. 34; EEO Tr. 154–55 (Wilson).

**3.** Wilson had been trained that an important part of the application was a timely supervisor's evaluation. EEO Tr. 152 (Wilson); *see also* EEO Tr. 149.

Shawnee Mission Post Office in Shawnee Mission, Kansas. As with the Olathe position, the announcement stated: "HOW TO APPLY (Individual Announcement Procedures): Complete Form 991 and return DIRECTLY to your immediate supervisor before the closing date shown above."[4] Williams Dep. Ex. 26; Williams Dep. 352–53; Moore Dep. Ex. 4. Plaintiff submitted the Form 991 for the Shawnee Mission position, which stated: "If you are applying for a specific position, complete pages 1–4 of this form and submit the completed form to your supervisor, who will complete the evaluation for each requirement. If you want a copy of the evaluation, check the box at left." Plaintiff checked the box with a handwritten "x." Williams Dep. Ex. 27 at 100. Plaintiff did not submit the completed Form 991 to her immediate supervisor. Further, instead of asking her then-current immediate supervisor to prepare an evaluation, she copied the Bruce Sanders evaluation for the prior job application (no. 96–55) and attached that evaluation to her application materials for the Shawnee Mission position. Sanders had prepared plaintiff's evaluation on August 20, 1996, and plaintiff submitted her application for the Shawnee Mission position on April 22, 1997.

The review board for the Shawnee Mission position comprised chairperson Charles Pennewell (Manager, Customer Service Operations, Prairie Village branch in Shawnee Mission, Kansas), Jeffrey Omang (Manager, Customer Service, Leawood Branch in Shawnee Mission, Kansas) and Jean Moore (Supervisor, Customer Service Operations, Shawnee Mission, Kansas). The review board members did not recommend plaintiff for the position because her supervisor evaluation was not current.

*Air Records Processor Position*

In 1997, plaintiff applied for and qualified for the position of Air Records Processor. Barbara McCrary, a USPS human resources specialist who was responsible for internal bidding for positions, was mistakenly informed that plaintiff did not qualify for the position. In August of 1997, the USPS awarded the position to another employee. In September of 1997, the USPS discovered its error. In October, it placed plaintiff in an Air Records Processor position.[5]

*Plaintiff's Use Of Leave*

On August 9, 1998, plaintiff submitted a Form 3971 (a request for or notification of absence) on which she requested three different types of leave: "COP" (continuation of pay), "sick" and "other". Because the form requested three different types of leave, Jerome Greene, plaintiff' supervisor, denied the request and told plaintiff to resubmit the form with only one block checked to indicate the type of leave that she was requesting.[6]

4. Again, the USPS Handbook provides that employees applying for an initial level supervisor position must submit the Form 991 "to their immediate supervisor for evaluation." EEO Case No. 4–I–640–0013–98 Ex. 34; EEO Tr. 154–55 (Wilson).

5. In November of 1999, during pay period 24, the USPS paid plaintiff $3,576.77 as out-of-schedule-pay for pay periods 16 through 21 of 1997 in connection with an EEO complaint. Decl. of Lonnie Beattle at 3–4. Pay periods 16 through 21 of 1997 correspond to July through October of 1997, the time for which plaintiff had qualified for the position of Air Records Processor, but had not yet been placed in the position.

6. On numerous occasions, plaintiff had submitted defective Forms 3971 in which she had requested multiple types of leave in the same request, or had requested Continuation of Pay ("COP"), a category of leave for which she did not qualify because she did not at the time have a recognized on-the-job injury. Greene had previously required plaintiff to resubmit a Form 3971 because she had requested COP leave for which she did not qualify.

On August 11, 1998, two days after she applied for leave, plaintiff was absent. When she returned to work, Greene specifically instructed her to submit a Form 3971 requesting leave for August 11. Plaintiff refused. Barnes, acting manager of operations, then asked her to change the Form 3971, and plaintiff replied that she had "sworn to God" that she would not sign another Form 3971. On approximately August 26, 1998, Greene issued plaintiff a Letter of Warning for being absent without leave ("AWOL") on August 11, 1998. Barnes Dep. 132–33; Barnes Dep. Ex. 8 at 25–26 (unsigned copy). Pursuant to a grievance process, on September 10, 1998, Barnes directed that the warning letter be expunged from plaintiff's record effective January 1, 1999, if she had no further AWOL-related discipline by that date. Plaintiff fulfilled that condition and the USPS expunged her warning letter.

### Clerk Stenographer Position

In June of 1997, plaintiff applied for the position of Clerk Stenographer. She took the required examination on June 19, 1997. Barbara McCrary, who was responsible for posting, bidding and awarding jobs, administered the exam. On June 29, 1997, plaintiff received a rating of "ineligible" for the Clerk Stenographer position.

### Stamp Distribution Clerk Position

In January of 1999, the USPS solicited applications for the position of Stamp Distribution Clerk (Notice 99BQ01). The vacancy notice stated that each applicant was responsible for ensuring that the application reached the Assignment Desk, Room 567, General Post Office not later than 4:00 p.m. on January 28, 1999. The USPS did not consider untimely applications. Plaintiff applied for the Stamp Distribution Clerk position but her application was received on February 3, 1999—after the deadline. On February 3, 1999, Human Resources Specialist Ofenie Roper sent plaintiff a letter which stated that her application was late and that she was therefore ineligible for the position. EEO Tr. 732–33; Investigative File for EEO Case No. 1–I–643–006–99 at 088. Ofenie Roper is an African–American female.

### Reduction Of Plaintiff's Base Pay Due To Failure To Apply For Available Positions

Plaintiff worked as a Mail Processing Letter Sorting Machine Distribution Clerk ("letter sorting machine clerk") from September 1987 until July 18, 1997, when the USPS abolished her position because it was eliminating letter sorting machines. Plaintiff was at pay Level 6 when the USPS eliminated her position. The USPS provided letter sorting machine clerks protection against a decrease in pay level if they met certain conditions and it also gave them the right to retreat to the first available Level 6 position. Beginning July 19, 1997, plaintiff received saved grade protection. She was entitled to pay protection until she failed to bid or apply for any posted Level 6 (or higher) full time assignment or until she asked to change to a lower level position. In October 1997, the USPS posted a Level 6 PSDS Technician position for which plaintiff did not apply. In February of 1999, the USPS realized that plaintiff was not entitled to continue saved grade status because she had not applied for the PSDS Technician position. It therefore terminated plaintiff's saved grade status and reduced plaintiff's pay to Level 5.

### Analysis

#### I. Plaintiff's Motion To Compel Mail Delivery

On May 26, 2004, defendant electronically filed a supplemental discovery response and a certificate of service to plaintiff by mail. Plaintiff asserts that on May 28, 2004, defendant "deliberately and with malice aforethought withheld notifica-

tion of action as allegedly served on Plaintiff by Defendants' (sic) representative, United States Attorney General Assistant Zimmerman." Plaintiff's *Motion To Compel Mail Delivery* (Doc. # 77) filed June 10, 2004, at 2. On May 28, 2004, plaintiff's letter carrier, Morton E. Peddicord, Jr., attempted to deliver a large envelope to plaintiff's mailbox. The mailbox was full of mail which had been delivered on previous days. Peddicord therefore placed in plaintiff's mailbox a notice that he had attempted to deliver a large envelope. The notice stated that plaintiff could pick up the envelope at the post office after 4:45 p.m. that day. Plaintiff did not pick up the package from the post office. On June 8, 2004, plaintiff wrote a note to Peddicord, asking whether a package which she had found in her mailbox was the one to which Peddicord had referred. Peddicord left a note that same day, stating: "I'll check for you. If there is a parcel I'll bring it out on 6–9–04." Exhibit 5 to Plaintiff's *Motion To Compel* (Doc. # 77). Peddicord found the envelope when he returned to the post office. On June 9, 2004, Peddicord delivered the envelope to plaintiff's mailbox. Plaintiff states that when she received the envelope (which contained defendant's supplemental disclosures comprised of copies of plaintiff's payroll records) it was "fully opened." Plaintiff suggests that defendant's representatives and employees have withheld and tampered with her mail, thereby obstructing justice and violating United States Code Title 39. Plaintiff asks the Court to issue an order prohibiting defendant from any further such action.

Defendant responds with Peddicord's statement that when he attempted to deliver the package, he did not know that plaintiff had a pending suit against the USPS. Plaintiff has presented no evidence that defendant or defendant's employees intentionally damaged the package. Furthermore, the package contained copies of plaintiff's payroll records and she does not claim that the contents were damaged or missing. Further, plaintiff has not identified any deadline that she missed because of the delay in delivery. In these circumstances, the Court finds that plaintiff's motion should be overruled.

## II. Defendant's Motion For Summary Judgment

Plaintiff claims that defendant discriminated against her on the bases of sex and race. Specifically, plaintiff alleges that because of her sex and race, defendant (a) failed to promote her to positions for which she applied or attempted to apply;[7] (b) in August of 1998, refused to accept a leave slip; (c) placed a warning letter in her record on August 26, 1998; and (d) terminated her saved grade pay status in February of 2002. Defendant seeks summary judgment, arguing that plaintiff cannot establish a prima facie case of sex or race discrimination and/or that even if plaintiff set forth a prima facie case, it has legitimate nondiscriminatory reasons for not promoting her to positions for which she applied, not accepting her leave slip, placing a warning letter in her record on August 26, 1998 and terminating her saved grade pay status in February of 2002. In response, plaintiff does not specifically address whether she has set forth a prima facie case or whether defendant's proferred reasons are a pretext for discrimination. Rather, she strenuously objects to

---

**7.** With regard to several positions for which plaintiff attempted to apply but her application was late, plaintiff attempts to characterize defendant's actions as adverse employment actions. Defendant asserts that those are properly deemed failure to promote claim. The Court finds that the claims are failure to promote claims because the refusal to accept the applications did not impact her then current conditions of employment.

the Court's decision to let defendant file a second motion for summary judgment and alleges that defendant's facts are based upon perjured testimony and altered documents.[8] Plaintiff asserts as follows:

> Defendant's re-presentation of false and misrepresented information without due regard for **perjured** alterations selectively presents evidence and centers arguments around the same presupposing the Court's continued biased demonstration by review solely of the information supplied by this officer of the Court while failing to view all the evidence as presented by Plaintiff and affirmed by Defendant's representative.
>
> Plaintiff asserts Defendant's pretext, falsification of documentation and perjured testimony evidence discrimination and temporal nexus for the same and is apparent to any reasonable and prudent purveyor *upon review.*
>
> Plaintiff's objection and appeal as applicable under Federal Rules Of Civil Procedure 60 as filed with this Court applies to Defendants' second rendering upon these bases is reiterated in part herewith as filed with the Court by personal delivery on 24th day of May 2004.
>
> Comes now Plaintiff ... seeking the mercy and justice of this Court by demonstration of evidence contradictory to alleged facts which the Court states Its ruling is based on.

Said facts are representative of Defendants' pretext contained in Motion For Summary Judgment without consideration of Plaintiff's Response and rendered evidence as supportive opposition to pretext and the Court's stated facts.

> . . . . .

> WHEREAS, Plaintiff asks this Court to **read** the seventy-nine (79) page appeal inclusive of exhibit list and the corresponding exhibits with continued arguments to render justice.

Plaintiff's *Response To Defendant's Second Motion For Summary Judgment* (Doc. # 79) filed June 10, 2004 at 2–3 (emphasis added).

 Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Disparate treatment analysis is applied to claims alleging the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. To prevail on her disparate treatment claim under Title VII, plaintiff must show that the discrimination complained of was intentional. *See Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999).

---

**8.** The Court allowed defendant to file a second motion for summary judgment when it became clear, at the status conference on May 5, 2004, that defendant believed in good faith that aside from defendant's conduct which resulted in the 1994 settlement, the pretrial order did not assert claims for race or sex discrimination. In ruling on defendant's first motion for summary judgment, the Court stated as follows:

> Reading the pretrial order as a whole, it is clear that plaintiff alleges discrete, independent acts of race and sex discrimination in EEOC complaints which she filed *after* she settled EEO Complaint Number 1085–94.

*See infra,* footnote 11. Defendant has not addressed the merits of these claims. The Court therefore finds that defendant is not entitled to summary judgment on plaintiff's claims of discrimination on the bases of race and sex.

*Williams v. Potter,* 316 F.Supp.2d 1122, 1135 (D.Kan.2004). Although it overruled defendant's motion for summary judgment on plaintiff's sex and race discrimination claims, the Court determined that affording defendant the opportunity to file a second motion for summary judgment would serve the interests of justice and judicial economy.

In a Title VII disparate treatment case, plaintiff has the initial burden to make a prima facie showing of sex or race discrimination by defendant. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (racial discrimination); *Burdine,* 450 U.S. at 252–56, 101 S.Ct. 1089 (sex discrimination). Plaintiff satisfies this burden by presenting a scenario which on its face suggests that defendant more likely than not discriminated against her. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The burden of establishing a prima facie case of disparate treatment is not onerous. *Id.* If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a "legitimate, nondiscriminatory reason" for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. To satisfy this burden, the "employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999) (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089). If defendant meets this burden, the burden then shifts back to plaintiff to provide evidence that defendant's reason is pretextual or unworthy of belief. *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. 1817. *See Danville v. Reg'l Lab. Corp.,* 292 F.3d 1246, 1250 (10th Cir.2002) (citing *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1137 (10th Cir.2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

## A. *Failure To Promote Plaintiff To ASP Program*

As stated above, plaintiff alleges that the USPS violated Title VII by not selecting her for the ASP program because of her race and sex. Defendant asserts that it is entitled to summary judgment on this claim because plaintiff cannot set forth a prima facie case of race or sex discrimination and, even if plaintiff presented a prima facie claim, the USPS had a legitimate, nondiscriminatory reason for its decision not to promote plaintiff to the ASP program.

To make a prima facie showing that defendant discriminated against her on the basis of sex and/or race when it did not promote her to the ASP program, plaintiff must show that (1) she belongs to a protected class; (2) she sought and was qualified for the ASP program; (3) despite her qualifications, she was not transferred into that program; and (4) the program position was filled or remained open and defendant continued to seek applicants from people of plaintiff's qualifications. *See Amro v. Boeing Co.,* 232 F.3d 790, 796–97 (D.Kan.2000) (treating failure to promote claim as analogous to failure to hire claim)(citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Defendant asserts that the record reflects that plaintiff was not qualified for the ASP program. Defendant points out that plaintiff has not rebutted its evidence that her performance on the interview was unacceptable.

Defendant alternatively asserts that even if plaintiff established a prima facie case of discrimination, the USPS had a legitimate, non-discriminatory reason for declining to accept plaintiff into the ASP program—she did not earn a composite score high enough to qualify for one of the 26 positions in the program. Plaintiff's performance in the interview, which the review board rated as among

the worst of all interviewees, resulted in a low overall rating. Although plaintiff testified that her interview was "acceptable" or "passing," her personal opinions about her qualifications do not give rise to a material factual dispute. *See Amro,* 232 F.3d at 798 (evaluation of own job performance insufficient to create material issue). Defendant has produced evidence of a legitimate, non-discriminatory reason for deciding that plaintiff was not one of the best qualified candidates for the ASP program. Plaintiff has not pointed to any evidence to rebut this legitimate reason. Even if she asserted that defendant used her poor interview as a pretext not to promote her, defendant has presented evidence that it selected three African American females, seven other females, and seven African American males for the 26 ASP positions. The Court finds that defendant is entitled to summary judgment on plaintiff's claim that in failing to select plaintiff for the ASP program, it discriminated against her on the basis of sex and/or race.

### B. *Failure To Promote To Customer Services Supervisor In Olathe*

 Plaintiff claims that defendant discriminated against her on the basis of her sex and/or race when it did not select her for the Olathe Customer Services Supervisor position. Defendant asserts that it is entitled to summary judgment on this claim because, even assuming that plaintiff has set forth a prima facie case of sex and/or race discrimination, defendant has shown a legitimate, non-discriminatory reason for not promoting her—plaintiff did not follow the procedure for submitting the Form 991 because she submitted an outdated supervisor's evaluation.

After reviewing plaintiff's application and discovering that she had not submitted a current evaluation, the review board decided not to recommend plaintiff for the Olathe position. Plaintiff has not come forward with any evidence that defendant's

stated reason for not promoting her to the Olathe position was a pretext for race or gender discrimination. The Court therefore finds that defendant is entitled to summary judgment on plaintiff's claim that in failing to promote her to the Olathe position, it discriminated against her on the basis of sex and/or race.

### C. *Failure To Promote To Customer Services Supervisor In Shawnee Mission*

Plaintiff claims that the USPS discriminated against her on the basis of her sex and/or race when it did not select her for the Supervisor of Customer Services in Shawnee Mission. Defendant asserts that it is entitled to summary judgment because even assuming plaintiff has set forth evidence of a prima facie case of race and/or sex discrimination, it had a legitimate, non-discriminatory reason for its decision not to promote plaintiff to the Shawnee Mission position.

As with the Olathe position, the Shawnee Mission vacancy announcement and the Form 991 instructed plaintiff to submit a current supervisor's evaluation for the position. The review board decided not to recommend plaintiff for the position because she did not do so. Plaintiff points to no evidence to rebut defendant's legitimate, nondiscriminatory reason for not promoting her. The Court therefore concludes that defendant is entitled to summary judgment on plaintiff's race and sex claims regarding the Shawnee Mission position.

### D. *Failure To Promote To Air Records Processor Position*

 Plaintiff next alleges that the USPS discriminated against her on the basis of race and sex when it initially concluded that she did not qualify for an Air Records Processor position in 1997.

Defendant asserts that even assuming that plaintiff has set forth a prima facie case of race and/or sex discrimination, defendant has articulated a legitimate, non-discriminatory reason for its action—it simply made a mistake when it initially determined that plaintiff did not qualify for the position. A mistake is not evidence of intentional discrimination. *See Toney v. Cuomo,* 92 F.Supp.2d 1186, 1193 (D.Kan. 2000) (deviation from procedure, standing alone, not sufficient to find pretext); *Kidd v. MBNA Am. Bank, N.A.,* 224 F.Supp.2d 807, 811–12 (D.Del.2002), aff'd, 93 Fed. Appx. 399, 401–02 (3rd Cir.2004) (mistake was legitimate, nondiscriminatory reason and plaintiff did not present evidence on which factfinder could reasonably believe that discriminatory reason was more likely motivating cause of defendant's action).[9] Because plaintiff has not pointed to any evidence to rebut defendant's nondiscriminatory reason, the Court finds that defendant is entitled to summary judgment on plaintiff's claim that defendant discriminated against her on the basis of sex and race when it delayed placing her in the Air Records position.

**E.** *Plaintiff's Use Of Leave And Letter Of Warning*

Plaintiff alleges that defendant discriminated against her on the basis of sex and race by harassing her about use of leave and breaks and by placing a letter of warning in her file on August 26, 1998. Defendant asserts that it is entitled to summary judgment because none of these actions constituted adverse employment actions. Alternatively, defendant asserts that it had legitimate, non-discriminatory reasons for the actions.

 Plaintiff alleges that her supervisor and manager took adverse employment action by repeatedly requiring her to resubmit leave forms and asking her whereabouts during breaks. Defendant points out that although the Tenth Circuit liberally defines adverse employment actions, actions that are merely inconvenient do not constitute adverse actions. *Wells,* 325 F.3d at 1212–13; *Heno v. Sprint/United Mgmt. Co.,* 208 F.3d 847, 857 (10th Cir.2000). Indeed, plaintiff's allegations do not demonstrate that defendant's conduct was materially adverse to her job status.[10] *Wells,* 325 F.3d at 1213. Therefore she has not demonstrated that defendant subjected her to adverse action. Further, plaintiff has produced no evidence of disparate treatment, *i.e.* that other employees did not have to resubmit claim forms or answer questions about their breaks.

 Plaintiff also alleges that the USPS discriminated against her on the bases of sex and race when it issued a letter of warning on August 26, 1998. Defendant asserts that plaintiff has not set forth a prima facie case of discrimination because the letter of warning, which was expunged, did not constitute adverse employment action. *See Cuenca v. Univ. of Kan.,* 265 F.Supp.2d 1191, 1209 (D.Kan. 2003) (letter of reprimand not adverse action where it did not have negative effect

---

**9.** Defendant further argues that plaintiff cannot demonstrate that she ultimately suffered any damages. The USPS placed plaintiff in an Air Records Processor position during the pay period after it discovered that she qualified for the position, and later paid her $3,576.77 for the lost pay period when she should have been placed in the position. *Benningfield v. City of Houston,* 157 F.3d 369, 378 (5th Cir.1998) (had plaintiff received full pay retroactively, claim would fail).

**10.** On numerous occasions, plaintiff had submitted defective Forms 3971 in which she had requested multiple types of leave in the same request, or had requested COP, a category of leave for which she did not qualify because she did not at the time have a recognized on-the-job injury.

on employment); *see also Benningfield,* 157 F.3d at 377 (formal AWOL reprimand that was rescinded by internal procedures not adverse employment action); *cf. Roberts v. Roadway Exp., Inc.,* 149 F.3d 1098, 1104 (10th Cir.1998) (20 written warnings were adverse actions because the more warnings an employee received, the more likely termination for further infraction would be). In this case, defendant expunged the warning letter through a grievance settlement dated September 22, 1998, and the record contains no evidence that the letter has impacted the terms and conditions of plaintiff's employment.

Plaintiff has not shown that the requests for re-submission of leave forms, inquiries about breaks, or the expunged warning letter constitute adverse employment actions. Defendant is entitled to summary judgment because plaintiff has not set out evidence of a prima facie case of discrimination based on these actions.

F. *Failure To Promote To Clerk Stenographer Position*

 Plaintiff alleges that defendant discriminated against her on the basis of race and/or sex when it did not promote her to Clerk Stenographer. Defendant asserts that it is entitled to summary judgment because plaintiff has not presented evidence of a prima facie case of discrimination and even if she did, it had a legitimate, non-discriminatory reason for not promoting her to the position.

As set forth above, one of the elements of a prima facie case of failure to promote is that plaintiff was qualified for the position. *See Amro,* 232 F.3d at 796. Plaintiff's performance on the Clerk Stenographer examination rated a score of ineligible, which disqualified her from the position. Further, even assuming that plaintiff established a prima facie claim, defendant has articulated a legitimate, non-discriminatory reason for the decision

not to place her as a Clerk Stenographer—her test rating of ineligible. Plaintiff has not attempted to rebut the proffered legitimate reason. Defendant is therefore entitled to summary judgment as to plaintiff's claim of race and sex discrimination based on the Clerk Stenographer position.

G. *Ineligibility To Apply For Positions Requiring Completion Of The ASP*

Plaintiff complains that the USPS made non-supervisory personnel ineligible for certain positions of Customer Services Supervisor in the Kansas City metropolitan area if they had not completed the ASP program and then discriminated against her on the basis of race and sex by not selecting her for that program. Plaintiff concedes that she never completed the ASP program, and that she therefore is not qualified for positions which required completion of the ASP. As a result, she cannot establish the second prima facie element of this failure to promote claim. *See Amro,* 232 F.3d at 796. Defendant is entitled to summary judgment on this claim.

H. *Rejection Of Plaintiff's Application For Stamp Distribution Clerk*

 Finally, plaintiff alleges that USPS discriminated against her on the basis of race and sex when it rejected her application for the position of Stamp Distribution Clerk. Defendant asserts that plaintiff has not set forth a prima facie claim of race or sex discrimination because she has not set forth evidence that she was qualified for the position. The position required that applicants apply by January 29, 1999, and plaintiff did not apply for the position until February 3, 1999. Even assuming that plaintiff stated a prima facie case, defendant has set forth a legitimate, non-discriminatory reason for rejecting her application—it was received after the

deadline. Plaintiff has presented no evidence to rebut defendant's proffered reason, and defendant is therefore entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that plaintiff's *Motion To Compel Mail Delivery* (Doc. # 77) filed June 10, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that *Defendant's Motion For Summary Judgment On Plaintiff's Race And Gender Claims* (Doc. # 74) filed May 26, 2004 be and hereby is **SUSTAINED**. The Clerk is directed to enter judgment for defendant on all claims.

**IT IS FURTHER ORDERED** that defendant's *Motion In Limine* (Doc. # 64) filed April 28, 2004 be and hereby is **OVERRULED** as moot.

**IT IS FURTHER ORDERED** that *Defendant's Motion To Continue Trial* (Doc. # 84) filed August 18, 2004 be and hereby is **OVERRULED** as moot.